APPALACHIAN ELECTRIC POWER COMPANY

V.

BURL A. SAWYERS, AS STATE ROAD COMMISSIONER
OF THE STATE OF WEST VIRGINIA

(No. 10800)

Submitted April 19, 1956.  Decided June 5, 1956.

*Ernest K. James, E. Glenn Robinson,* for relator.

*John G. Fox,* Attorney General, *Charles R. McElwee,* Assistant Attorney General, for respondent.

GIVEN, JUDGE:

In this original proceeding in mandamus petitioner, Appalachian Electric Power Company, seeks a peremptory writ against defendant, Burl A. Sawyers, as State Road Commissioner of West Virginia, directing defendant to institute and prosecute a proceeding in eminent domain, in the Circuit Court of Kanawha County, for the purpose of ascertaining just compensation for property of petitioner allegedly taken or damaged by the State of West Virginia, in the construction of a public highway. Defendant demurred to the petition filed herein on the ground that no right acquired by petitioner, by virtue of the lease agreement under which it claimed, had been affected by the construction of the public highway. No question of fact is in dispute.

In 1914 the Cannelton Coal and Coke Company, being the owner in fee of a large tract of land situated in Kanawha and Fayette Counties, executed unto the Virginian Power Company a ninety nine year lease upon part of that tract, which lease embraces the land alleged to have been taken or damaged. The petitioner herein has succeeded to the rights of the lessee under that lease. The

land was leased to the Virginian Power Company for the purpose of erecting and maintaining electric transmission lines, together with necessary wires, cables, towers, poles and other appliances or structures necessary and proper to safely maintain and operate such power lines. The lease contained these pertinent provisions: "* * * It is, however, further understood between the parties hereto, and as a part consideration of this lease, that the said right of way and the use thereof by the Power Company is subject to all proper uses by the Coal Company of the land hereby leased, not inconsistent with the uses for which said way is so granted, and is not to interfere with the right of the first party to open and operate mines, drill and operate oil and gas wells and construct and maintain tipples, inclines and other structures and pipe lines, roads, tramroads, railroads, to construct and maintain transmission lines for the purpose of transmitting electric current, power, energy and other electrical power or to give to other corporations, persons or companies the right to erect, maintain and operate electric plants and the right to cross the lines or rights of ways of the Power Company with other lines, and other things as set forth in the recital aforesaid of its consent, when, where, and to the extent, that the first party may deem such necessary or convenient to the use, enjoyment and development of its said property, and upon condition that the second party will, in such case, at its own expense, so change said line or lines as to avoid such interference * * *".

The Virginian Power Company, or its successors, has maintained and operated electric power lines over the land embraced in the lease since shortly after the date thereof and has erected and maintained thereon towers, poles and other fixtures or structures necessary for the purposes of maintaining and operating its electric power lines and cables, and petitioner was so operating its power lines over the same at the time of the alleged taking.

By deed dated May 12, 1954, the Cannelton Coal and Coke Company conveyed unto the State of West Vir-

ginia three parcels of land, or easements over the same, for public road purposes, which parcels, in part, at least, were embraced in the lease to the Virginian Power Company. Thereafter, the State of West Virginia, through its State Road Commissioner, took possession of the parcels and has constructed, or is constructing, a public highway across the same and, it is alleged, has taken or damaged other property of petitioner.

It is alleged, in effect, that defendant, in the excavation for and construction of the highway, within the area embraced in the lease, removed lateral support from towers constructed and used by petitioner in the maintenance of its power lines, making it necessary that such towers be relocated and reconstructed; that after demand defendant had refused to relocate or reconstruct such towers; that petitioner was, at its own costs, forced to relocate and reconstruct, and did relocate and reconstruct, certain towers for the purposes aforesaid; and that though demand for reimbursement for such costs has been made, defendant has refused to reimburse petitioner therefor.

The position of the State is that the provisions of the lease, quoted above, relating to the obligations of the lessee to remove or change the location of its lines or towers within the easement area, upon the happening of certain contingencies, bind petitioner, as successor to the lessee named in the lease, and require petitioner at its own costs to remove or change the location of its lines and towers, in the event the easement area, or any part thereof, is taken for public road purposes. We think there is no merit in that position.

It is true that the lessor retained certain privileges and rights as to the area embraced in the lease, and that in the description of such privileges and rights the word "roads" was used. It is also true that the lessee agreed, upon the happening of certain contingencies, to "at its own expense, so change said line or lines, as to avoid" interference with certain rights or privileges retained by

lessor as to the premises embraced in the lease. But the whole language must be looked to and considered for a determination of the obligation thereby imposed on the lessee and the rights and privileges retained by lessor. In an examination of such language, we find nothing therein indicating that the lessor therein retained, or intended to retain, the right to deprive the lessee of the use of the easement area, or any part thereof, by a sale or conveyance thereof for State road purposes, or for any other purposes. The rights so retained, including the rights to open "roads", were for "proper uses by the Coal Company", the lessor, in the development of its property — the rights "to open and operate mines, drill and operate oil and gas wells, and construct and maintain tipples, inclines and other structures * * *". Even the rights and privileges retained by the lessor over the easement area were not to be "inconsistent with the uses for which said way" was granted to the lessee. Clearly, the word "roads", when read in context, is limited to private roads for use of the lessor in the use and development of its own property. The effect of the clear and unambiguous language is simply that the lessor was not to be deprived or unnecessarily inconvenienced in its use or development of its own property, and only in the event of an interference of such rights of the lessor by the lessee in the use of the easement area was the lessee required to "so change said line or lines as to avoid such interference". True, the rights reserved by lessor included the right to permit others to "cross the lines or rights of ways of the Power Company with other lines", but again such rights were expressly limited to the "use, enjoyment and development" of the property of the lessor. The use of the easement area for a public highway is something quite different, something never contemplated by the parties to the lease, and something that effectually denies to the lessor, as well as the lessee, the use of the area for which just compensation is sought.

In *Hardy and Dietz* v. *Simpson, State Road Commission*, 118 W. Va. 440, 190 S. E. 680, 191 S. E. 47, we held:

"1. Section 9, Article 3 of the Constitution which provides that 'Private property shall not be taken or damaged for public use, without just compensation' requires action on the part of the state, its sub-divisions or instrumentalities, to ascertain damages and compensate owners of property for the taking thereof or damage thereto, incident to any public improvement for which such property may be appropriated." See *Childers* v. *State Road Commissioner*, 124 W. Va. 233, 19 S. E. 2d 611; *Riggs* v. *State Road Commissioner*, 120 W. Va. 298, 197 S. E. 813.

Petitioner having shown a clear legal right to the relief sought, a peremptory writ in mandamus will be awarded as prayed for.

*Writh awarded.*