STATE *ex rel.* HENRY L. WILEY, *et al.*

*v.*

STATE ROAD COMMISSION OF WEST VIRGINIA *etc.,* AND
BURL A. SAWYERS, STATE ROAD COMMISSIONER *etc.*

(No. 12269)

Submitted September 10, 1963. Decided November 5, 1963.

*James B. McIntyre, Thomas S. Moore,* for relators.

*Theodore L. Shreve,* for respondents.

BERRY, PRESIDENT:

This is a proceeding in mandamus instituted under the original jurisdiction of this Court. The petitioners, Henry L. Wiley and Betty L. Wiley, seek to compel Burl A. Sawyers, State Road Commissioner of West Virginia, to institute condemnation proceedings to ascertain damages, if any, due petitioners for an alleged denial to them of direct access to a relocated section of U. S. Route 60 in the vicinity of Rand, Kanawha County, West Virginia.

A rule to show cause as to why the relief prayed for should not be granted was issued on July 31, 1963, returnable to September 4, 1963, and continued to September 10, 1963, at which time it was submitted on arguments and briefs to the Court for decision.

The only pleadings in connection with this proceeding are the petition filed by the petitioners and an answer filed by the respondents. No evidence or proof was submitted, nor any stipulation of facts filed. Allegations contained in the petition which would warrant the granting of the writ are denied by the respondents' answer, which also raises defenses of the nature of affirmative allegations as distinguished from denials.

The land involved in this proceeding is part of a real estate development initiated in 1913 by the then owner of the land in question, Plus R. Levi, who recorded a plat in that year showing the lots in question, with a street called Elmwood Avenue in connection therewith and providing access thereto. In 1944 the State Road Commission of West Virginia acquired title by purchase to part of the property in question from the then owners of said property in question, Lots Numbers 5 and 6, Block G-1, Levi, Malden District, Kanawha County, West Virginia, and the land purchased by the State Road Commissioner apparently included all of Elmwood Avenue. The purchase of this land from the predecessors in title was done in con-

templation of the relocation of U. S. Route 60. The petitioners obtained title to the remaining portion of Lots 5 and 6, Block G-1, Levi, Malden District, Kanawha County, West Virginia in 1951, 1955 and 1963. The plat showing Lots 5 and 6, as laid out in 1913 and recorded in the office of the clerk of the county court of Kanawha County in that year was not made a part of the record in this proceeding, and the exact amount of said property, or lots acquired by the State Road Commission in 1944, is not indicated by any map or shown by the record.

Although it is alleged by the petitioners in their petition that the property owned by them abuts U.S. Route 60, which is denied in respondents' answer, it is clear from other allegations contained in the petition and deduced from the answer that the property in question never abutted U.S. Route 60 until it was relocated and declared a limited-access highway by the respondents in 1962.

It would appear that if the petitioners are entitled to any relief in this matter it would have to be based on an allegation contained in the petition wherein it is stated that the respondents "relocated U.S. Route No. 60, superimposing a portion thereof, upon the situs of the then existing Elmwood Avenue.", all of which is denied in the answer filed by the respondents.

As heretofore stated, no proof was taken to support this allegation and if Route 60, when relocated, was not superimposed on any portion of Elmwood Avenue, or if Elmwood Avenue was a private road and was purchased in fee from all parties having any interest therein, the petitioners could not prevail in this proceeding, because they would have no clear legal right thereto.

Relocated U.S. Route 60 was barricaded at both ends until it was opened in 1962 as a freeway or limited-access highway. However, during the interim, while it was being built and before its opening as a freeway or limited-access highway, the petitioners were allowed by permit to cross the unfinished highway in order to get to U.S. Route 60, which was located on the other side of the New York Central Railroad tracks. It was necessary for the

petitioners to cross these tracks before entering the then located U.S. Route 60, even before the relocated Route 60 was ever built.

It appears from the briefs of both parties that in 1960 the respondents obtained an additional portion of land which ran parallel to the new U.S. Route 60 and constructed a "frontage" road thereon, which afforded the petitioners access to the new U.S. Route 60 at a place suitable to the respondents, but not suitable to the petitioners, because it did not afford them direct access to the new U.S. Route 60.

It is true that the right of direct access to a street or highway by an owner of land which abuts on said street or highway is a property right of which the property owner cannot be deprived without just compensation. *State ex rel. L. L. Ashworth* v. *State Road Commission,* 147, W. Va. 430, 128 S. E. 2d 471; 29 C.J.S., Eminent Domain, Easements, §105 at page 912. However, damages may not be recovered in such cases by owners of property not abutting on such street or highway after relocation thereof where reasonable and adequate access thereto is provided in another direction or by other means. *Heavner et al.* v. *State Road Commission,* 118 W. Va. 630, 191 S. E. 574. See *Richmond* v. *City of Hinton,* 117 W. Va. 223, 185 S. E. 411. Furthermore, this right of direct access and damages for the deprivation thereof do not exist when a highway is relocated by new construction where it did not previously exist and when, after such construction is completed thereon, the highway is designated as a controlled-access highway before being opened to the public. *D'Arago* v. *State Roads Commission,* 228 Md. 490, 180 A.2d 488; *State ex rel. L. L. Ashworth* v. *State Road Commission,* 147 W. Va. 430, 128 S. E. 2d 471.

The pleadings in the case at bar indicate that the petitioners' property only abuts the relocated portion of U.S. Route 60, which, upon its completion and opening to the public was declared a limited-access highway. Therefore, the petitioners would not be entitled to any damages

for loss of direct access in any event, unless their property had abutted upon a former road or highway, a portion of which the relocated portion of U.S. Route 60 was superimposed upon, thereby removing their right to access to the old road. Permission to travel upon and over the relocated portion of Route 60 before its completion would give the petitioners no right of damages for loss of direct access. 29 C.J.S., Eminent Domain, Easements, §105 at page 911; *State of W. Va. by State Road Com.* v. *Sanders,* 125 W. Va. 143, 23 S. E. 2d 113. If the portion upon which Route 60 was superimposed was a private road, and all the right, title and interest thereto was acquired by the State Road Commission by deed of conveyance from all property owners having any right or claim thereto, or no easement was reserved by the property owners for any private road and no notice thereof given to the State Road Commission at the time of purchase, there would be no right of direct access remaining to the petitioners in the instant case. *Patton* v. *Quarrier,* 18 W. Va. 447; *Shaver* v. *Edgell,* 48 W. Va. 502, 37 S. E. 664.

When this extraordinary proceeding, instituted under the original jurisdiction of this Court, was submitted for final determination by the Court, issues of facts were involved, and the issues of law cannot be determined without the submission of evidence or exhibits or the filing of a stipulation of facts. *State ex rel. Gordon, etc., et al.* v. *McMahon,* 128 W. Va. 470, 37 S. E. 2d 91; *State ex rel. Fanning* v. *Mercer County Court et al.,* 129 W. Va. 584, 41 S. E. 2d 855; *Board of Trustees* v. *City of Huntington,* 142 W. Va. 217, 96 S. E. 2d 225; *State Board of Education* v. *Carwile et al.,* 169 Va. 663, 194 S. E. 855.

As indicated above, this case was submitted upon petition and answer and this Court cannot consider as sustained the material allegations contained in the petition which are denied by the answer and any undenied material allegations contained in the answer must be considered as being true. *State ex rel. Gordon etc., et al.* v. *McMahon, supra; State ex rel. Fanning* v. *Mercer County Court et al., supra; Board of Trustees* v. *City of Huntington, supra.*

This question is clearly and precisely discussed in the case of *Board of Trustees* v. *City of Huntington, supra,* at page 231, wherein it is stated:

> "The practice has prevailed in this Court for many years in cases of *habeas corpus,* mandamus and prohibition which were instituted under the original jurisdiction of this Court, as provided by Article VIII, Section 3 of the West Virginia Constitution, the only cases in which the Supreme Court of Appeals has original jurisdiction, that this Court will not try such cases in piecemeal. It therefore becomes necessary for this Court in such an original proceeding to ascertain initially whether the proceedings upon final submission for decision present only an issue or issues of law. As a corollary of this postulate of procedure, well known to the Bench and Bar of this State, *the petitioner in such an original proceeding must always run the risk of submitting his case where there are undetermined issues of fact raised by the pleadings, which are not met by depositions, stipulation, or other competent proof, otherwise the uncontroverted allegations of the answer of the respondent must be taken as true."* [latter emphasis supplied]

In the case of *Riggs* v. *State Road Commissioner,* 120 W. Va. 298, 197 S. E. 813, involving a similar situation, the proceeding in mandamus under the original jurisdiction of this Court was submitted on petition, respondents' answer and *deposition,* and although there was a conflict in the proof with regard to the alleged damage, the writ was awarded, because sufficient showing was made which entitled them to a determination of the controversy in eminent domain proceeding. In that case, the only question involved was whether or not the petitioner had been damaged, while in the case at bar, the question is whether or not the petitioners possess any legal right upon which damages could be awarded to them. In the case of *State ex rel. French et al.* v. *State Road Commission, et al.,* 147 W. Va. 619, 129 S. E. 2d 831, it is true that the proceeding in mandamus, instituted under the original jurisdiction of this Court, was

submitted upon petition and answer, but the only question involved in that case was whether or not there was any damage done to petitioners' property as the result of the construction of the highway. Although the answer contained a substantial denial of any damage done to the petitioners' property, it also contained an allegation that if any damage resulted to such property as a result of the construction or improvement of the highway the respondents' damage was not of such nature as to impose liability on the respondents in an eminent domain proceeding. It was held that the mandamus proceeding indicated that probable damage had resulted to the petitioners' property without an actual taking of such property and the writ was awarded to require the State Road Commissioner to institute proper eminent domain proceedings to ascertain if the petitioners were entitled to any damage in such case. It was also specifically held in that case, as in all other cases of a similar nature, that: " 'A writ of mandamus will be issued only upon a showing that relator has a clear legal right to the relief sought.' " Point 3, syllabus, *State ex rel. Neal* v. *Barron*, 146 W. Va. 602, 120 S. E. 2d 702.

In the case at bar, for the reasons stated herein, it has not been shown in any manner that the petitioners have a clear legal right to the relief sought. The writ is therefore denied.

*Writi denied.*